UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

UNITED STATES OF AMERICA

v.  No. 5:23-cr-38-BJB

NATASHA HARRIS-JOHNSON

\* \* \* \* \*

ORDER

After *voir dire* on the first day of her criminal trial, *pro se* Defendant Natasha Harris-Johnson challenged the petit jury about to be impaneled because, to her eyes, the venire panel included too few African Americans. This argument follows many others: Confrontation Clause objections to grand-jury proceedings, purported Takings claims for the Government's use of her name in court filings, and a series of ill-fated jurisdictional objections culminating in a now-rejected bid for interlocutory appellate review. *See* DN 100 at 1 (describing Harris-Johnson's argumentation to date); DNs 111 & 113 (Court of Appeals orders denying interlocutory relief).

Unlike its predecessors, this jury-composition argument is neither frivolous nor inflected with Sovereign Citizen theories. Although Harris-Johnson voiced concern that she failed to express her objection in appropriate legal terms, the nature of her objection was plenty clear: she invoked her right to a jury chosen from a fair cross-section of the community. *See Taylor v. Louisiana*, 419 U.S. 522, 527 (1975) ("in the context of a federal criminal case and the Sixth Amendment's jury trial requirement," a jury must be "drawn from a fair cross section of the community"). Allegations that jury-selection procedures systematically exclude a racial group are serious, as the Court explained on the record in responding to Harris-Johnson's objection. The Court declined to immediately stay the proceedings, but provides this written order to acknowledge her objection, describe the governing law, and offer Harris-Johnson, who is black, the chance to more fully develop her argument.

"To establish a prima facie case for a fair-cross-section claim, a defendant must show: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *United States v. Johnson*, 95 F.4th 404, 410–11 (6th Cir. 2024) (quoting *Duren v. Missouri*, 439 U.S. 357, 364 (1979)). In simpler

1

terms, a defendant must identify a "disparity" suggesting "systematic exclusion" and link it to "a specific procedural or operational flaw." *Id.* at 412 (citation omitted).[1]

Importantly, no defendant is "entitled to" a jury pool or seated jury "of any particular composition": there is "no requirement that petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population." *Taylor*, 419 U.S. at 538; *see also United States v. Watkins*, 691 F.3d 841, 851 (6th Cir. 2012) (applying *Taylor* both to the venire composition and the resulting petit jury). "The focus," rather, "is on the procedure for selecting juries, and not the outcome of that process." *Ambrose v. Booker*, 684 F.3d 638, 645 (6th Cir. 2012). Harris-Johnson's right, and this Court's duty, is to ensure that the process for summoning and selecting jurors in her criminal trial did not systematically exclude African Americans.

As for the first requirement, Harris-Johnson has identified a "distinctive group in the community"—African Americans, *see Lockhart v. McCree*, 476 U.S. 162, 174–75 (1986). As for the second, she has alleged but not yet shown that the venire representation is not fair and reasonable relative to the community. She objected that only two black prospective jurors[2] appeared in the courtroom for *voir dire*, with one of those two excused for cause at the request of Harris-Johnson and the prosecution due to health issues.

Harris-Johnson has not yet identified any statistical disparity between the jury pool and the community. Nor has she traced any such disparities to exclusionary aspects of the jury-selection procedures used in this court. That's not unusual: few defendants have enough information, during trial and before inspecting any records, to make such a showing on their own. And Congress has demanded that parties raising this challenge offer "a sworn statement of facts" in support, which Harris-Johnson has not (though the Court will afford her the chance to do so). *See* 28 U.S.C. § 1867(d) (motions challenging selection procedures must, among other things, "contai[n] a sworn statement of facts").[3]

---

[1] Some decisions have contemplated that a litigant might show "systematic exclusion" by pointing to a disparity so immense that no explanation besides a flawed selection policy is plausible. *See Johnson*, 95 F.4th at 412–13.

[2] According to the juror-selection materials shared with Harris-Johnson and the Government before trial, an additional four prospective jurors identified as multiracial.

[3] Claims that a venire doesn't fairly reflect the community may be raised under either the Sixth Amendment or the Jury Selection and Services Act, 28 U.S.C. § 1867 *et seq*. The scope of their protections are "the same," *Johnson*, 95 F.4th at 411, though their procedures differ somewhat. The statute expressly authorizes trial judges to "stay the proceedings" in response to challenges, § 1867(a), *if* the complaining party can show "a substantial failure to comply with the" law, § 1867(d). In declining to stay the proceedings at this stage, the Court

Given these legal requirements, Harris-Johnson's right to challenge the venire, and her *pro se* status, the Court construes her motion as a request to inspect jury-selection records and then decide whether to offer a sworn statement and attempt to show an unlawful disparity. To that end, the Court orders the Clerk to docket, under seal, the three most recent "AO-12 forms" from the Paducah Jury Division. *See* 28 U.S.C. § 1867(f) ("The contents of records or papers used by the jury commission or clerk in connection with the jury selection process" may be provided for the "preparation or presentation of a motion [such as Harris-Johnson's]."); *United States v. Bagcho*, 923 F.3d 1131, 1135–37 (D.C. Cir. 2019) (describing procedures for handling these motions). The AO-12 forms are used by the Court to document the makeup of jury pools. Based on that information, and any other available to her, Harris-Johnson may attempt to identify any significant statistical disparity she may perceive and then argue why it is or may be traceable to the Court's procedures. *See* this Court's General Orders 25-04 & 25-17. Should Harris-Johnson choose to make such a filing, the Court will promptly address it.

In the meantime, however, trial will continue. At this point, Harris-Johnson's observations about the makeup of the venire panel fall short of a demonstration that the procedures used amounted to a "substantial failure to comply" with the law that would justify a stay of the trial under 28 U.S.C. § 1867(d).

And granting a stay now would earn Harris-Johnson little of consequence, since the Court could award her complete relief (a retrial) later should her challenge succeed (even after a conviction). *See* FED. R. CRIM. P. 33(a) ("Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."); *Smith v. United States*, 599 U.S. 236, 245 (2023) ("[R]etrial is the appropriate remedy when a defendant is tried by a jury that does not reflect a fair cross-section of the community."). Halting or continuing the trial now, by contrast, would in the Court's assessment burden the parties, court staff, and witnesses who have (after much effort and prior delays) finally gathered to efficiently try this long-running case. *See United States v. Vasquez*, 560 F.3d 461, 466–67 (6th Cir. 2009) (affording trial judges "extraordinary deference" when confronted with "request[s] [that] would almost certainly necessitate a last-minute continuance") (citation omitted). The Court will ensure Harris-Johnson has appropriate time to review the jury records without interrupting her preparation and conduct of trial, which she has chosen to undertake herself with the aid of elbow counsel rather than a court-appointed defense lawyer.

---

therefore relies on the statutory standard governing that form of interim relief—without prejudice to any statutory or constitutional arguments that Harris-Johnson may raise in a future motion.

In inspecting the documents to be filed on the sealed record, Harris-Johnson must not share the documents with anyone besides her elbow counsel or use it for any purpose unrelated to this motion. *See* 28 U.S.C. § 1867(f) ("Any person who discloses the contents of any record or paper in violation of this subsection may be fined not more than $1,000 or imprisoned not more than one year, or both."). The order to keep the docketed material under seal is provisional and applies until Magistrate Judge King considers whether and to what extent it should remain sealed.

If Harris-Johnson wishes to bring any further challenge to the venire after the full opportunity to examine these records, she should raise this concern by filing a motion and sworn statement of facts, *see* 28 U.S.C. § 1867(d). If a hearing is needed to resolve the motion, a representative from the Clerk's office would be available to answer questions regarding the Paducah Division's jury-selection procedures if Harris-Johnson requests such a hearing. *See United States v. Gray*, No. 5:22-cr-15, 2024 WL 4520953, at *2 (W.D. Ky. Oct. 17, 2024).

\* \* \*

While the Court will move forward carefully with the trial and this jury challenge, this should not be misunderstood as an opportunity to revisit the jurisdictional, grand-jury, due-process, and other threshold objections repeatedly advanced and rejected pretrial. After entertaining numerous briefs and oral arguments on these issues, the Court is satisfied of its jurisdiction and convinced that none of Harris-Johnson's arguments about alleged financial relationships, identity, or prosecutorial misfeasance warrants delay. As the Court explained on the record and in many prior written orders, its decisions on these threshold arguments are now the law of the case. These "issues cannot be argued and reargued without end," and the Court will not reconsider them. *Edmonds v. Smith*, 922 F.3d 737, 739–40 (6th Cir. 2019).

Benjamin Beaton, District Judge
United States District Court

January 14, 2026